IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| DARRYL DANA THOMAS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 321-082 |
| | ) | |
| KAREN THOMAS, Unit Manager, and JACOB BEASLEY, Deputy Warden of Security, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, incarcerated at Smith State Prison, commenced the above-captioned case pursuant to 42 U.S.C. § 1983 concerning events alleged to have occurred at Telfair State Prison ("TSP"). He is proceeding *pro se* and *in forma pauperis* ("IFP"). Because he is proceeding IFP, Plaintiff's second amended complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

**I.      SCREENING THE SECOND AMENDED COMPLAINT**

**A.      BACKGROUND**

Plaintiff names the following Defendants: (1) Karen Thomas, TSP Unit Manager, and (2) Jacob Beasley, former TSP Deputy Warden of Security. (Doc. no. 21, pp. 1-2.) Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On September 29, 2021, Plaintiff was housed in the segregation unit at TSP. (Id. at 12.) Upon returning to his cell after taking a shower, Plaintiff noticed his personal property scattered across the cell and was informed his cellmate "was refusing to allow [him] back into the cell for unknown reasons." (Id.) CERT Team members removed the cellmate and several items of Plaintiff's property. (Id.) Plaintiff attempted to discuss the theft of his personal property with Defendant Thomas, but when he realized she was not concerned about Plaintiff's property, he "became indignant and refused to allow [his] flap [on the cell door] to be secured." (Id.)

Defendant Thomas secured the other cell flaps in the unit, exited, but returned with another officer who had a camera. (Id.) Defendant Thomas then approached Plaintiff's cell door and "immediately sprayed mace into the tray flap." (Id.) Despite having mace on his face, arm, and chest area, Plaintiff "continued to protest my indignation" and kept his arm in the tray flap. (Id.) Defendant Thomas sprayed Plaintiff a second time with her mace. (Id.) Plaintiff continued to keep his arm in the flap and refused to allow the flap to be secured. (Id.) Recognizing Plaintiff "was steadfast in [his] protest," Defendant Thomas called Defendant Beasley, who arrived on the scene and sprayed Plaintiff with mace for a third time. (Id.) Plaintiff continued to protest. (Id. at 13.)

Both Defendants then went outside the building in order to spray their mace in Plaintiff's back cell window, and while they relocated, Plaintiff was able to write a sign for the security cameras asking for the return of his personal property. (Id.) After spraying mace in Plaintiff's back window, both Defendants re-entered the building, and Defendant Beasley threatened to use his taser on Plaintiff. (Id.) At that point, Plaintiff withdrew his arm so the cell flap could be secured. (Id.) Both Defendants left the building without providing Plaintiff an opportunity to rinse off the mace or obtain medical attention, which is a violation of prison regulations. (Id.)

Plaintiff then developed swollen eyes, a dry throat, and a rash on his arms. (Id.) For three days, Plaintiff attempted to talk to the medical staff conducting pill call, but they did not help him. (Id. at 13-14.) He also asked correctional officers for water to rinse off because the water in his cell was not working because of a maintenance issue. (Id. at 14.) Plaintiff acknowledges he did not talk to either Defendant about his situation after they closed the flap and left his cell on September 29, 2021. (Id. at 13, 14.)

Plaintiff filed a grievance against Defendants on October 1, 2021, alleging they had violated prison regulations, but the grievance was denied. (Id.) A member of the medical staff checked on Plaintiff on October 6, 2021, and advised him to file a medical request to address any "lingering injuries" from the September 29th incident. (Id.) Plaintiff received a disciplinary report ("DR") for the events of September 29th, which he believes defamed his character because it made him "look like a behavioral problem." (Id. at 15.) However, Plaintiff's cellmate, who precipitated the events of September 29th, did not receive a DR for theft of Plaintiff's property or any of the events related to refusing to allow Plaintiff back into the cell after his shower. (Id.) Plaintiff seeks monetary damages for Defendants' failure "to properly follow policy and procedure when conducting use of force" on him, as well as for loss of his property. (Id. at 5.)

**B.      DISCUSSION**

    **1.      Legal Standard for Screening**

The amended complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the

same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (*per curiam*) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the amended complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the amended complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). However, this liberal construction does not mean that the Court has a duty to re-write the amended complaint. See Bilal v. Geo Care, LLC, 981 F.3d 903, 911 (11th Cir. 2020); Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

## 2. Plaintiff Fails to State a Claim Based on Alleged Violation(s) of Prison Regulations

To the extent Plaintiff complains prison regulations were not followed for employing a chemical agent, including subsequent decontamination rules, or handling his grievance, he fails to state a constitutional claim. An allegation of non-compliance with a prison regulation by prison officials is not, in itself, sufficient to give rise to a claim upon which relief may be granted. See Sandin v. Conner, 515 U.S. 472, 481-82 (1995) (noting that many prison regulations are "primarily designed to guide correctional officers in the administration of a prison" and that "such regulations are not designed to confer rights on inmates"); Mathews v. Moss, 506 F. App'x 981, 984 (11th Cir. 2013) (*per curiam*) (finding district court properly dismissed prisoner's claim concerning prison officials' alleged failure to follow prison procedures with respect to grievances); Bingham v. Thomas, 654 F.3d 1171, 1177-78 (11th Cir. 2011) (*per curiam*) (explaining "an inmate has no constitutionally-protected liberty interest in access to [a prison grievance] procedure."); Taylor v. White, Civ. Act. No. 11-0377-CG-N, 2012 WL 404588, at *5 (S.D. Ala. Jan. 10, 2012) ("A claim based on a prison official's failure to follow prison regulations or state regulations, without more, simply does not state a claim for deprivation of a constitutional right."), *adopted by*, 2012 WL 403849 (S.D. Ala. Feb. 7, 2012). Accordingly, Plaintiff has failed to state separate claim upon which relief may be granted based on any alleged violation(s) of a prison regulation.

To the extent Plaintiff may be attempting to state a separate constitutional claim about the failure to follow decontamination procedures after he was sprayed, including providing for an immediate medical examination, he also fails to connect either named Defendant to the alleged violation. Beyond suggesting a medical examination and/or decontamination is part of a prison regulation concerning use of a chemical agent, Plaintiff does not allege either

5

Defendant was responsible for, or directly involved in any decision to withhold treatment. See Douglas v. Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong."); see also Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) ("Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability."). Indeed, Plaintiff specifically alleges both Defendants left the unit immediately after the incident, and he states he was unable to notify either Defendant about the conditions in his cell because they left the unit. (Doc. no. 21, pp. 13, 14.) As Plaintiff acknowledges he was unable to tell Defendants about his conditions of confinement, his allegations are insufficient to support a deliberate indifference claim. See Barcelona v. Rodriguez, 847 F. App'x 739, 742 (11th Cir. 2021) (*per curiam*) (affirming dismissal of deliberate indifference claim based on use of pepper spray without adequate decontamination where defendants did not have subjective knowledge of risk of serious harm to prisoner); Chandler v. Crosby, 379 F.3d 1278, 1289-90 (11th Cir. 2004) (explaining conditions of confinement claim requires showing of extreme condition posing unreasonable risk of serious damage to future health or safety and an official's awareness and disregard of excessive risk to health).

### 3. Plaintiff Fails to State a Claim for Loss of Personal Property

Plaintiff's allegations regarding loss of his personal property also fail to state a federal claim for relief. The Fourteenth Amendment does not protect against all deprivations of property, only against deprivations that occur "without due process of law." Parratt v. Taylor, 451 U.S. 527, 537 (1981), *overruled on other grounds*, Daniels v. Williams, 474 U.S.

327, 330-31 (1986). Georgia has created a civil cause of action for the wrongful deprivation of personal property. O.C.G.A. § 51-10-1. This statutory provision covers the unauthorized deprivation of an inmate's property by prison officials. Grant v. Newsome, 411 S.E.2d 796, 799 (Ga. Ct. App. 1991). The statutory cause of action constitutes an adequate post-deprivation remedy under Parratt. See Byrd v. Stewart, 811 F.2d 554, 555 n.1 (11th Cir. 1987). Thus, Plaintiff has an adequate remedy at State law, and he fails to state a valid § 1983 claim against either Defendant for the loss of any personal property.

### 4. Plaintiff Fails to State a Claim Related to his Disciplinary Report

Plaintiff's claims related to his DR are unclear because he states he questions the timing of the DR but also appears to concede the DR was based on his admitted refusal to follow directions to remove his arm from the tray flap. Indeed, the crux of the second amended complaint is the chemical spray incident precipitated by Plaintiff refusing to remove his arm from the tray flap, and he attaches the records regarding his DR describing the process he received. (Doc. no. 21, Ex. 4.) He is, however, upset that his cellmate, who he claims set the whole incident in motion by refusing to let him back in the cell, did not receive a DR. (Id. at 15.) To the extent Plaintiff is complaining prison regulations regarding writing a DR were not followed, as explained above, failure to follow a prison regulation alone does not state a constitutional claim.

To the extent Plaintiff is attempting to state a procedural due process claim, his assertion fails to state a claim upon which relief can be granted because, as explained below, he has not alleged a protected liberty interest was implicated by time-limited restrictions on his prison privileges. Prisoners have "no constitutionally protected liberty interest in being classified at a certain security level or housed in a certain prison." Kramer v. Donald, 286 F. App'x 674, 676 (11th Cir. 2008) (*per curiam*); see also Meachum v. Fano, 427 U.S. 215,

223-24 (1976) (finding no liberty interest in transfer to less agreeable prison).  However, there are two instances in which a prisoner may claim a protected liberty interest has been violated by placement in punitive segregation:  the placement (1) "will inevitably affect the duration of his sentence"; or (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484, 486.  As Plaintiff has not alleged his punishment for the DR extended the length of his incarceration, the Court turns to the "atypical and significant hardship" prong.

"It is plain that the transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." Al-Amin, 165 F. App'x at 738-39 (citing Hewitt v. Helms, 459 U.S. 460, 468 (1983), *modified on other grounds*, Sandin, 515 U.S. at 481)); see also Chandler v. Baird, 926 F.2d 1057, 1060 (11th Cir. 1991) (stating Due Process Clause does not "create 'an interest in being confined to a general population cell, rather than the more austere and restrictive administrative segregation quarters.'" (citation omitted)).  Thus, the Court must consider whether a deprivation of in-prison privileges "impose[s] atypical and significant hardship on [Plaintiff] in relation to the ordinary incidents of prison life." Hill v. Sellars, No. 5:15-CV-00453, 2016 WL 7972197, at *5 (M.D. Ga. Nov. 17, 2016) (citing Sandin, 515 U.S. at 484 and Wilkinson v. Austin, 545 U.S. 209, 223 (2005)), *adopted by*, 2017 WL 343638 (M.D. Ga. Jan. 23, 2017).  To meet this pleading requirement, Plaintiff "must state or allege *facts* to show an 'atypical and significant hardship.'" Gilyard v. McLaughlin, No. 5:14-CV-185, 2015 WL 1019910, at *7 (M.D. Ga. Mar. 9, 2015).  Stated otherwise, for the Court to determine whether the state has created a protected liberty interest, Plaintiff must allege sufficient facts about the "ordinary incidents of prison life" and

8

the conditions of confinement he experiences to state a plausible claim for relief.  See Mathews v. Moss, 506 F. App'x 981, 984 (11th Cir. 2013); Hill, 2016 WL 7972197, at *5.

Plaintiff has not provided any information about typical conditions at TSP, let alone alleged the phone, visitation, package, or store restrictions posed an "atypical and significant hardship" on him. There is no baseline of typical conditions against which Plaintiff could plausibly allege a conditions of confinement claim, and at best, he has alleged he is upset his cellmate, who "started it," did not receive a DR.[1]  The time-limited restrictions on Plaintiff's prison privileges, in the face of his admitted refusal to follow instructions, does not amount to a constitutional violation. See, e.g., Anthony v. Warden, 823 F. App'x 703, 707-08 (11th Cir. 2020) (*per curiam*) (finding no protected liberty interest in privilege for additional outdoor exercise beyond opportunity provided to walk outside or exercise in cell while in administrative segregation); Johnson v. Patterson, Civ. Act. No. 13-00221, 2014 WL 4771738, at *7 (S.D. Ala. Sept. 24, 2014) (citing Sandin and collecting cases for proposition loss of phone, store, and visitation privileges for forty-five days not "atypical and significant hardship" that would support due process claim); see also Gilyard, 2015 WL 1019910, at *6-7 (dismissing Due Process claim where the plaintiff made little or no mention of conditions of prisoners not in administrative segregation, thereby failing to establish protected liberty interest); Watkins v. Humphrey, Nos. 5:12-CV-97 and 5:12-CV-118, 2014 WL 6998102, at *1-2 (M.D. Ga. Dec. 10, 2014) (dismissing Due Process claim where the plaintiff failed to provide facts comparing his conditions of confinement differed from those in the general population).

---

[1]To the extent Plaintiff may be trying to bring an equal protection claim because he received a DR but his cellmate did not, such a claim fails.  Plaintiff has not alleged different treatment based on a constitutionally protected interest like race.  See Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001) (*per curiam*).

9

In an abundance of caution, the Court also analyzes any potential substantive due process claim. The parameters of such a claim have been succinctly summarized as follows:

> Substantive due process "protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition." Washington v. Glucksberg, 521 U.S. 702, 720-21 (1997) (citing Moore v. East Cleveland, 431 U.S. 494, 503 (1977)). Substantive due process differs from procedural due process in that "a violation of a substantive due process right . . . is complete when it occurs." McK[i]nney v. Pate, 20 F.3d 1550, 1557 (11th Cir. 1994). Pursuant to Sandin, [t]he Due Process Clause standing alone confers no liberty interest in freedom from state action "taken 'within the sentence imposed.'" 515 U.S. at 480 (quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983)). Meaning, "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement. Wilkinson, 545 U.S. at 221 (citing Meachum v. Fano, 427 U.S. 215, 225 (1976)).

Hill, 2016 WL 7972197, at *7.

As discussed in detail above, Plaintiff has not alleged his restricted prison privileges constitute an atypical and significant hardship, and thus no constitutionally protected liberty interest is implicated. Accordingly, Plaintiff fails to state a substantive or procedural Due Process claim. See Smith v. Deemer, 641 F. App'x 865, 868-69 (11th Cir. 2016).

Finally, the extent Plaintiff claims he was "defamed" by the DR, he fails to state a claim for defamation. "Under Georgia law, three elements must be proved to establish defamation: (1) a false statement that was (2) malicious, and (3) published." Boyd v. Experian Info. Sols., Inc., 692 F. App'x 980, 983 (11th Cir. 2017) (*per curiam*) (citing O.C.G.A. § 51-5-1(a)). Plaintiff freely admits he refused to remove his arm from his tray flap, the stated basis for the DR. (Doc. no. 21, p. 4.) As Plaintiff has not shown there was a false statement, he fails to state a claim for defamation.

### 5. Plaintiff Fails to State a Claim for Official Capacity Monetary Damages

To the extent Plaintiff is attempting to sue Defendants in their official capacities, the Eleventh Amendment bars official capacity claims against state prison officials for money damages.  See Kentucky v. Graham, 473 U.S. 159, 169 (1985).  Therefore, any official capacity claims against Defendants for monetary relief fail as a matter of law and should be dismissed.

## II. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** all claims concerning (1) any alleged violation(s) of a prison regulation or concomitant Eighth Amendment claim regarding decontamination rules, (2) loss of personal property, (3) due process or defamation with respect to the DR, and (4) official capacity monetary damages, be **DISMISSED** for failure to state a claim upon which relief may be granted.  By separate Order, the Court directs service of process on Defendants Beasley and Thomas for alleged use of excessive force.

SO REPORTED and RECOMMENDED this 25th day of May, 2022, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA