IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| DARRYL DANA THOMAS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 321-082 |
| | ) | |
| KAREN THOMAS, Unit Manager, and JACOB BEASLEY, Deputy Warden of Security, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**O R D E R**

Plaintiff, incarcerated at Smith State Prison, commenced the above-captioned case pursuant to 42 U.S.C. § 1983 concerning events alleged to have occurred at Telfair State Prison ("TSP"). He is proceeding *pro se* and *in forma pauperis* ("IFP"). Because he is proceeding IFP, Plaintiff's second amended complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

**I.     SCREENING THE SECOND AMENDED COMPLAINT**

Plaintiff names the following Defendants: (1) Karen Thomas, TSP Unit Manager, and (2) Jacob Beasley, former TSP Deputy Warden of Security. (Doc. no. 21, pp. 1-2.) Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On September 29, 2021, Plaintiff was housed in the segregation unit at TSP. (Id. at 12.) Upon returning to his cell after taking a shower, Plaintiff noticed his personal property scattered across the cell and was informed his cellmate "was refusing to allow [him] back into the cell for unknown reasons." (Id.) CERT Team members removed the cellmate and several items of Plaintiff's property. (Id.) Plaintiff attempted to discuss the theft of his personal property with Defendant Thomas, but when he realized she was not concerned about Plaintiff's property, he "became indignant and refused to allow [his] flap [on the cell door] to be secured." (Id.)

Defendant Thomas secured the other cell flaps in the unit, exited, but returned with another officer who had a camera. (Id.) Defendant Thomas then approached Plaintiff's cell door and "immediately sprayed mace into the tray flap." (Id.) Despite having mace on his face, arm, and chest area, Plaintiff "continued to protest my indignation" and kept his arm in the tray flap. (Id.) Defendant Thomas sprayed Plaintiff a second time with her mace. (Id.) Plaintiff continued to keep his arm in the flap and refused to allow the flap to be secured. (Id.) Recognizing Plaintiff "was steadfast in [his] protest," Defendant Thomas called Defendant Beasley, who arrived on the scene and sprayed Plaintiff with mace for a third time. (Id.) Plaintiff continued to protest. (Id. at 13.)

Both Defendants then went outside the building in order to spray their mace in Plaintiff's back cell window, and while they relocated, Plaintiff was able to write a sign for the security cameras asking for the return of his personal property. (Id.) After spraying mace in Plaintiff's back window, both Defendants re-entered the building, and Defendant Beasley threatened to use his taser on Plaintiff. (Id.) At that point, Plaintiff withdrew his arm so the cell flap could be

secured. (Id.) Both Defendants left the building without providing Plaintiff an opportunity to rinse off the mace or obtain medical attention, which is a violation of prison regulations. (Id.)

Plaintiff then developed swollen eyes, a dry throat, and a rash on his arms. (Id.) For three days, Plaintiff attempted to talk to the medical staff conducting pill call, but they did not help him. (Id. at 13-14.) He also asked correctional officers for water to rinse off because the water in his cell was not working because of a maintenance issue. (Id. at 14.) Plaintiff acknowledges he did not talk to either Defendant about his situation after they closed the flap and left his cell on September 29, 2021. (Id. at 13, 14.)

Plaintiff filed a grievance against Defendants on October 1, 2021, alleging they had violated prison regulations, but the grievance was denied. (Id.) A member of the medical staff checked on Plaintiff on October 6, 2021, and advised him to file a medical request to address any "lingering injuries" from the September 29th incident. (Id.) Plaintiff received a disciplinary report ("DR") for the events of September 29th, which he believes defamed his character because it made him "look like a behavioral problem." (Id. at 15.) However, Plaintiff's cellmate, who precipitated the events of September 29th, did not receive a DR for theft of Plaintiff's property or any of the events related to refusing to allow Plaintiff back into the cell after his shower. (Id.) Plaintiff seeks monetary damages for Defendants' failure "to properly follow policy and procedure when conducting use of force" on him, as well as for loss of his property. (Id. at 5.)

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds Plaintiff has arguably stated a viable excessive force claim against Defendants Thomas and Beasley. See Hudson v.

McMillian, 503 U.S. 1, 6-7 (1992). In a companion Report and Recommendation, the Court recommends dismissal of claims concerning any alleged violation(s) of a prison regulation or concomitant Eighth Amendment claim regarding decontamination rules, loss of personal property, due process or defamation with respect to the DR, and official capacity monetary damages.

## II.   INSTRUCTIONS

**IT IS HEREBY ORDERED** that service of process shall be effected on Defendants Thomas and Beasley.[1] The United States Marshal shall mail a copy of the amended complaint, (doc. no. 21), and this Order by first-class mail and request that each Defendant waive formal service of the summons. Fed. R. Civ. P. 4(d). Individual defendants have a duty to avoid unnecessary costs of serving the summons, and if a defendant fails to comply with the request for waiver, the defendant must bear the costs of personal service unless good cause can be shown for failure to return the waiver. Fed. R. Civ. P. 4(d)(2). A defendant whose return of the waiver is timely does not have to answer the amended complaint until sixty days after the date the Marshal mails the request for waiver. Fed. R. Civ. P. 4(d)(3). However, service must be effected within ninety days of the date of this Order, and the failure to do so may result in the dismissal of any unserved defendant or the entire case. Fed. R. Civ. P. 4(m). Plaintiff is responsible for providing sufficient information for the Marshal to identify and locate Defendants to effect service.

---

[1]The Court notes Defendant Beasley is identified as a former Deputy Warden at TSP, (doc. no. 21, p. 2), and according to public records of the Department of Corrections, he is now located at Valdosta State Prison. See www.dcor.state.ga.us; select About GDC, Divisions, Facilities, Facilities Directory (last visited May 25, 2022). Therefore, the Marshal shall send the service paperwork to Defendant Beasley at Valdosta State Prison.

**IT IS FURTHER ORDERED** Plaintiff shall serve upon the defendants, or upon their defense attorney(s) if appearance has been entered by counsel, a copy of every further pleading or other document submitted to the Court. Plaintiff shall include with the papers to be filed a certificate stating the date a true and correct copy of any document was mailed to the defendants or their counsel. Fed. R. Civ. P. 5; Loc. R. 5.1. Every pleading shall contain a caption setting forth the name of the court, the title of the action, and the file number. Fed. R. Civ. P. 10(a). Any paper received by a District Judge or Magistrate Judge that has not been properly filed with the Clerk of Court or that fails to include a caption or certificate of service will be returned.

It is Plaintiff's duty to cooperate fully in any discovery that may be initiated by the defendants. Upon being given at least five days notice of the scheduled deposition date, Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath and solemn affirmation, any question that seeks information relevant to the subject matter of the pending action. Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, <u>including dismissal of this case</u>. The defendants shall ensure Plaintiff's deposition and any other depositions in the case are taken <u>within the 140-day discovery period</u> allowed by this Court's Local Rules.

While this action is pending, Plaintiff shall immediately inform this Court and opposing counsel of any change of address. Failure to do so will result in dismissal of this case.

Plaintiff must pursue this case; if Plaintiff does not press the case forward, the Court may dismiss it for want of prosecution. Fed. R. Civ. P. 41; Loc. R. 41.1. If Plaintiff wishes to obtain facts and information about the case from the defendant, Plaintiff must initiate discovery. <u>See</u>

generally Fed. R. Civ. P. 26 through 37 (containing the rules governing discovery and providing for the basic methods of discovery). Plaintiff should begin discovery promptly and complete it within four months after the filing of the first answer of a defendant named in the amended complaint screened herein.

Interrogatories are a practical method of discovery for *pro se* litigants. See Fed. R. Civ. P. 33. Interrogatories shall not contain more than twenty-five questions. Id. Plaintiff must have the Court's permission to propound more than one set of interrogatories to a party. Discovery materials should not be filed routinely with the Clerk of the Court; exceptions include when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial. If Plaintiff wishes to file a motion to compel pursuant to Fed. R. Civ. P. 37, he should first contact the attorney for the defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery. Loc. R. 26.5.

Plaintiff must maintain a set of records for the case. If papers are lost and new copies are required, these may be obtained from the Clerk of the Court at the standard cost of fifty cents per page.

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within fourteen days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Loc. R. 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that there is no opposition to the defendant's motion and grant the dismissal.

A response to a motion for summary judgment must be filed within twenty-one days after service of the motion. Loc. R. 7.5, 56.1. A failure to respond shall indicate that there is no opposition to the motion. Loc. R. 7.5. Furthermore, each material fact set forth in a defendant's statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should a defendant file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine issue as to any material fact in this case. That burden cannot be carried by reliance on the conclusory allegations contained within the complaint. Should a defendant's motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest the defendant's statement of the facts. Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine issue for trial, the consequences are these: any factual assertions made in the defendant's affidavits will be accepted as true and summary judgment will be entered against Plaintiff pursuant to Fed. R. Civ. P. 56.

SO ORDERED this 25th day of May, 2022, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA